Right, we'll proceed with our next case this morning. It is Willis v. Oklahoma County Detention Center, number 246247. And counsel, I think, Francine, you're counsel for appellant. You may proceed. Thank you, your honor. May it please the court, Derek Francine, on behalf of the estate of Mitchell Willis who died while in custody at the Oklahoma County Detention Center, a detention center that has had long-standing issues and concerns and constitutional violations against its detainees for many years prior to this event. So much, in fact, that the Department of Justice had to intervene and enter into a memorandum of understanding to start overseeing and exercising control over them to get them to get back on path of having a constitutional facility. In this case... You said there was an overseer? They come in, they do inspections, they evaluate issues, they identify concerns between staffing, funding, failure to provide medical... How long did that overseer remain involved? They are still involved. Okay. And in this case, plaintiff has had three separate attempts to bring back in the county to hold them accountable for their policies, procedures that were the moving force behind the death of Mitchell Willis. The first one was an amended complaint that a motion to dismiss was granted. Plaintiff had very limited facts, no discovery in order to fully flesh out all the details. And the court just found that there wasn't sufficient information to move forward finding a policy violation. Plaintiff believes that the facts ultimately bore out that the allegations claimed by plaintiff were presented to the court in subsequent filings as well. And I think this highlights why the motion to dismiss stage, if there's any evidence in allegations suggesting that there is a moving force behind the policies, procedures causing the injury of the person who has a constitutional violation, because it's not disputed that the other two... Actually, I think there was five individual defendants at one point, two of which that the court allowed to move forward finding constitutional violations and denied qualified immunity, that it was based upon the training, especially in the instance of Jonathan Johnson, which gets us to the motion to amend the complaint to try to join back in the county after, again, limited discovery was done. The parties did not get a scheduling order until late in 2019, I believe it was November 2019 at some point. As we all know, COVID hit in March of 2020. At that time, the plaintiff had issued written discovery, issued requests for admissions, and even requested depositions that were not scheduled yet when everything was shut down. In order to preserve any concern over Oklahoma's savings statute in amending the petition to bring back in the county after a dismissal without prejudice, the plaintiff filed his motion to amend based upon evidence and admissions of Jonathan Johnson and other information obtained during that time period. That included Jonathan Johnson himself admitting in a request for admission that his maneuver performed on Mr. Willis that caused the injury was based upon his training received at the Oklahoma County Detention Center. This was not a maneuver that he came up with on his own. This was not a maneuver that he performed based upon some outside training or just some rash decision. He was following his instructions and performed a maneuver, which is called a three-point maneuver, and it's where you place your foot, wedge it within the neck of the person that you're supposed to be using it when they're combative. The testimony ultimately bore out from the training officer, Officer Slayton, that he gave them full discretion to use it at any time that they wanted to. They were not prohibited under Oklahoma County Detention Center training rules to perform it on non-combative detainees. This maneuver was put in place. He puts his foot in there. He's trained. If he wants to hold the person down further, he shifts his weight from his toes to his knee, which is critical because Officer Slayton also instructs them to place the knee diagonally over the spine, which is the critical fact that is contradicted by the appropriate training techniques of this maneuver by Major Heron and Jason Ruge and Liam Plana's own expert in this that you should never cross over the spine because of the concern and risks that are known to cause injuries to the spine. You made it sound like part of the training process was put your knee across and over the back. I'm a little confused about that. Where in training manuals or processes or proceedings is that this is the way we teach this three-point maneuver? Well, there's two places you can look. One is an affidavit of Jason Ruge that is in the record. He ultimately contradicted his own affidavit from another case. I believe that's at appendix volume two, page 566. He shows himself in this position where and you can clearly see his knee is directly over the back. The second knee is Officer Slayton. That affidavit was not a training. That was an after the fact statement demonstration of how he thought it should be done. But your statement to the panel was that they were to do it the way it in fact was done. My question is, where is the evidence of that, that they were affirmatively trained with evidence not historical or after the fact? Well, Officer Slayton, the training officer confirmed in testimony that he trains officers put the knee diagonally over the spine. Appendix volume three, page 56. And Jonathan Johnson affirmed that he was trained to put it at the 45 degree angle over the spine. Now, and it's Heron and Ruge that say, wait a minute, that's not how it should have been trained. They weren't the training officers. They were supervisors to Slayton and never correct to Slayton in training it in this fashion. And they said the appropriate way to train it is you put your knee parallel to the spine. One of them even described the spine as an equator and you say on your side of the equator. And that is the critical moving force behind this. If Jonathan Johnson is never trained and isn't purely just following his training, thinking he's doing what his instructors and his training instructor told him to do, he is never going to put Mr. Willis at risk for this injury. During this positional restraint when Mr. Willis, it is undisputed that Mr. Willis was noncombatant during this time period. There was zero. The point I just wanted to make was the evidence of their training that you're relying on is testimony and demonstrations after the accident. I'm asking what I thought I was asking was, is there training material or demonstrations or videos before the accident that supports this is the way you're being trained? That is before this accident happened. There are no videos or instruction manuals that they provide any of their officers on how to perform this maneuver. So we must rely on officer Slayton's testimony and how he affirmatively trained Mr. Johnson prior to this event. This training was done prior to this event. He testified. So I think all that would be just another fact, another piece of evidence that supports the statement. I think we can't discount the statement of a training officer. I understand that. Okay. That answers my question. Thank you. And and I think that. So could I just could I just jump in and and and ask for some procedural context here. It seems that the evidence you're pointing to and the arguments you're making now go to your second issue, which has to do with the denial of leave to file the amended complaint. Is that correct? Is that is that what we're talking about? Correct. It's both information raised and presented the denial to leave and information raised and presented at the motion to reconsider state is that the court abused their discretion. All right. So you you haven't made you're not arguing that the original decision to dismiss the amended complaint. At least I haven't heard any arguments this morning that that that that that we should reverse on that a decision. I think that we did make arguments on that. And I think there are basises in the amended complaint that show that statements were made that support the subsequently found information. There's the only one real tweak to the information found was that we thought it was a knee strike due to the severity of the injury caused to Mr. Willis. We assume that this had been some sort of big strike. Well, I guess I mean, this may be getting a little more technical in terms of procedure. But if if we disagree with your argument on the second issue, the the futility issue on the motion for for leave to amend, if we if we disagree with you on that, doesn't your first issue fail as well? I think that the concern would be is we never had the opportunity to do full discovery on this county, which is why the motion. Well, let me just put it this way. You're saying that the discovery process revealed information that was not available to you in drafting the I guess the the amended complaint. Right. And so you're coming back to the district court and saying, oh, look, we just took out we took discovery and now we're enhancing our complaint. We can make it better. We're going to we want you to let us file a second amended complaint. And my question to you is, doesn't this appeal hinge on that issue? Not the first one, because if we rule against you on the the motion to amend leading to a second amended complaint, how can you succeed on your first issue? I will concede if you believe that the information provided is futile, that that would end the argument. But I would want to point to the recent decisions beyond what plaintiff presented, the Weigel v. Broad and Booker cases, the more that were determined or Kruger and Teets that were determined that showed these this type of positional restraint, the prone positional restraint on a noncombatant person is a constitutional violation. And on top of that constitutional violation that has been confirmed and said longstanding by this court is the the the moving force of the dangerous knee position over the spine that the district court determined was not futile as it was as it pertained to Jonathan Johnson. And if a defendant officer is purely following his his training, how can that not be the moving force behind the ultimate injury if that action is deemed to be unconstitutional? And I would like to reserve the remaining time for rebuttal. Thank you, counsel. Mr. Hendrickson. May it please the court. My name is Jeffrey Hendrickson, counsel for the appellee, the board of county commissioners for Oklahoma County. Your honors, the district court properly dismissed plaintiff's amended complaint. And it'll be clear there was an original complaint that was filed. And then prior to I can't recall if it was served or not, but prior to any action by the defendant, there was an amended complaint that was filed. So the offer of pleading at for the first instance in the court's review in the in the 2019 order was actually an amended complaint. The district court's decision to dismiss the amended complaint as failing to state a Monell claim, a claim of municipal liability against Oklahoma County was correct. Beyond that, the district court's decision to deny the plaintiff's motion to amend, which was filed after the deadline to do so, was also correct. And lastly, the district court's decision to deny the estate the plaintiff's request to for the district court to reconsider its order denying the motion to amend was also correct. Counsel, do you agree with the district court that the first amended complaint plausibly alleged a municipal policy or custom? Your honor, we're not contesting the finding from the district court in that instance. However, the district court's finding in that regard was sort of narrowed down to the sheriff of the Oklahoma County Sheriff's Department was the policymaker for the jail. And that was the basis for the district court's conclusion that there was a municipal policy at issue. And so the briefing in this appeal hasn't really had anything to do with whether the municipal policy was established. But for the purposes of the argument today and for the briefs, we're not contesting the district court's finding that a policy was established. The district court, whether or not was right about that, was plainly correct as to its conclusion that the estate had failed to plead any allegations, which would have suggested that the county had any notice of problems with training, had any reason to believe that there was an issue that would lead to potentially a constitutional violation. And so as such, at the very least, there was no causal relationship. There was no force and there certainly was no deliberate indifference. So whether or not you can't control the power going out, right? Some sort of power surge. All right. That's my surprise. So I don't know if you remember where you were. You were sort of in mid-sentence and I do. We'll be a little flexible on the timing on this to make sure you get a chance to present your argument. But you can pick up where you left off. Let's proceed. Thank you, Judge Matheson. And I appreciate that. And again, my apologies to the board and to my colleague on the other side. Oh, there we go. Okay. I didn't see the timer going down, but it is now. Very good. As I was discussing, I don't necessarily think the district court was correct that a municipal policy was found, but I don't think it is outcome determinative because I think whether or not the finding of delivered indifference points to the existence of a policy, which I think that is actually what the law is, versus whether the finding of delivered indifference points to the existence of a cause, is kind of immaterial. The argument where the district court was correct was that the original amended complaint did not contain any allegations which would have established delivered indifference, which is a requirement under cases like Connick v. Thompson, which discuss what must be shown in the event the allegation is that the municipal policy was one of failing to train or failing to supervise. And I don't think there's any disagreement that the policy at issue would be the allegation of a failure to train. So, your honors, that's why it's kind of important to start off exactly with what this case is about. It has several procedural components to it. It has standards involved at the Rule 12b6 motion to dismiss stage. It has standards involved at the motion to amend stage under Rule 15 and then the interpretations of Rule 15, including that amendment should not be allowed if doing so would be futile, which itself incorporates the Rule 12b6 standard all over again. And then it involves standards at the motion to reconsider stage, where the district court has the ability to rule and it only can be overruled if it's found that the ruling from the district court was arbitrary, whimsical, or capricious in some manner in that regard. So, there are multiple procedural components to this case and different standards to be asserted. But the key, the central key of this case, and what I didn't hear any words on this from my colleague on the other side, and I think I understand why, is because it has everything to do with municipal liability. In fact, I think I heard Mr. Francine tell this court that how could it not be the moving force if it's the case that Mr. Officer Jonathan Johnson had said or was found that his action cause was an unconstitutional violation, unconstitutional use of excessive force. Well, Mr. Hendrickson, one of the procedural components that makes this case a little different from the usual 12b6 motion to dismiss is that there's discussion in the briefing about the discovery, what came out through discovery after dismissal of the first amended complaint. And there's sort of a summary judgment feel to that because we're looking at the complaint, but there's also arguments based on what is in the discovery record. And so, I guess the question I have is if we're still talking about 12b6 and amendment and futility, should the district court and should this court be looking strictly at what was alleged in the first, the amended complaint or the proposed second amended complaint? Should we even be looking at the discovery record? Why wouldn't that convert this into more of a summary judgment discussion? Your Honor, I think this court can rule for the appellee of Oklahoma County, even if it takes a look at the proposed second amended complaint and just reads the allegations on its face. I think the court absolutely can do that. And I frankly believe that is what the district court did as well. In its order denying the motion to amend, was it assessed specifically the allegations that were made by or the proposed allegations that were to be made by the district? Okay, but in the proposed second amended complaint, here's one of the allegations. I wonder what you would say about this or what we should say about it. There's an allegation that defendant Johnson admitted that any use of force on Mr. Willis was based on training received by the OCDC, including placement of his knee on Mitchell Willis' spine. Why doesn't that plausibly allege a policy causing injury? Judge Matheson, that's an absolutely fair question. And the reason for that would be because of the holdings from the Supreme Court that discuss, and I believe Pembauer v. Cincinnati is one, Propotnick v. the City of St. Louis is another, that discuss how individual officers' statements about what their training was or what their training was not by themselves do not serve as the basis for any sort of municipal policy. So Officer Johnson could say, well, this was based on my training, but that doesn't make it his training. And even if you assume that to be true, it still does not relieve the estate of the obligation to establish a municipal liability claim. And that leaves open the door for the additional requirement that they must show, which is, okay, that was based on the training. Did the county have any idea that a constitutional violation was going to occur because of the way that it was training its employees? Did the county have any idea that a constitutional violation was likely to occur based on the way it was training its employees? Did the county have any reason at all to believe that the way it was training its employees could result in a We won't look at any of the actual discovery material that was submitted to be ruled upon. The outcome would be the same because as Judge DeGiussi and as the district court found, even if you credit those as accurate, you still have to bridge this gap and the estate did not do so. The only effort the estate made to do that was to cite two items. One was a 2008 Department of Justice report, which was issued nine years prior to the alleged facts in this case, which happened in August of 2017. But was there continued supervision of the sheriff's office after that? Your Honor, at the time in 2017 when the allegations occurred, I certainly am not aware that there was continued supervision. But even if there was continued supervision at the time, Judge Ebel, the fact of the matter is there's nothing that's been put in the record in this case that would have to do with continued supervision for the types of facts that are at issue in this case. And that was frankly... And we're really dealing with pleading. I mean, your point is, I think your point is that this is a pleading analysis rather than a factual analysis. Is that right? Or did I just get that inversed for you? I think that is certainly a way that this court could go. And it's back to Judge Matheson's as to what do we do with this discovery material? I think that in moving to amend, the court is certainly allowed to consider any of the items that are put before it when it determines whether or not the allegations are sufficient, in the same way that the court would be permitted to consider any discovery material that was attached to the amended complaint to begin with, which in this case actually was the Department of Justice report. It was submitted as an exhibit. So my position would be, Judge, did you see the district court was certainly allowed to consider the discovery material that the estate put to the court when it moved to amend its amended complaint? But even if the court considers only the facial allegations, it's... Well, I'm interested in that point though. Why was the district judge permitted to consider this material that is outside the four corners of the complaint? Why is that permissible in a 12B6 type context? Well, Judge Matheson, my recollection is that, and I believe the record shows that that material was submitted as an effort to move to add, basically. It was a request for admission from Officer Jonathan Johnson, where he said, yes, I admit everything that happened was based on my training. And then it was also some emails. And as far as I understand it, that was considered because it was submitted to the court. But even if the court erred in considering those materials, looking directly just at the text of the proposed second amended complaint itself, and finding that it was futile, was an appropriate decision for the court to make. And that goes back to my point with respect to bridging the gap between an unconstitutional event occurring and establishing municipal liability. And so I believe the district court was correct in its assessment that even if it considered the truth and judged those allegations to be true for the purpose of the motion to dismiss, what was not shown, and what Mr. Francine has spent no time on, is bridging the gap. And what is bridging that gap? It's the causal connection between the underlying event and the municipal state of mind. And in this case, there is nothing that has been submitted at any point that would show that causal connection, that deliberate indifference, that municipal state of mind. It wasn't pled in the original amended complaint. It wasn't contained within the proposed second amended complaint. And none of the materials that were submitted to the district court, for example, on the motion to reconsider, would have established that that additional prong, the causal prong, the deliberate indifference, existed in this case. Well, those are two prongs, aren't they? I mean, there's causation, but you also have to show deliberate indifference, right? And that's correct, Your Honor. What would the complaint need to allege to show deliberate indifference on the training, on their training theory? Certainly. So, you can establish on the training theory by allegations of similar conduct close in time where an officer has taken an action that was similar or close to similar, that would have been in the same time period where the type of training involved would have been similar. And you could allege, hey, here's what happened in 2015 and 2016, for example. And you had these incidents, all of which stem from a use of force. And I would add, in fact, that exact scenario was presented by the Leighton v. Bordeaux County Commissioner's case. That case is a 2013 appendix opinion from this court that discussed the denial of medical care to an inmate who was known to have medical conditions and need medication for those. And the allegations in that case were that the medication wasn't provided despite the knowledge from the officers that it was needed. And the way that municipal liability was established in that case was by referring to the 2008 Department of Justice report, which factually occurred only a year before the allegations in the Leighton case, and elicited basically specific facts that the Department of Justice found that were not happening at the jail, many of which had to do with the passing of medication, the paying attention to inmates and knowing of their medical conditions. And so, not only because of the DOJ report in 2008, but because of the Sheriff's Department's own investigations two years prior to Leighton, an additional outside agency investigation just prior to Leighton, the Tenth Circuit in that case found that there was a pattern of conduct shortly beforehand that would have given rise or given the basis for a failure-to-train claim, unlike this case, which the DOJ report happened nine years before, Leighton happened at least five years before, and had nothing to do with what the allegations in this case were. So, your honors, I see I'm running out of time. We would urge this court to affirm the rulings of the district court in this matter. And I'll take any questions if needed. Otherwise, thank you. Thank you, counsel. We have some time for rebuttal. Yes, thank you. I'd like to just start with the why does a report, if they're continuing under DOJ supervision, which they were at this time, why does a report that also talked about the prevalence use of force by the staff as being a constitutional issue by DOJ not be relevant? Just because the report was written nine years ago doesn't mean that they're not still having- I mean, we are dealing, I mean, I'm confused because we're really dealing with pleadings here. That's what Judge Matheson pointed out. Was there anything in a pleading that they are under continued observation right now? I don't know. I think it was inferred, the inference. Not inferred. I mean, the question was whether it was correct to dismiss the case on a pleading in a pleading environment. Was it ever pled that they are under continuing examination now because of the fear, I guess, of the current policy, which is reflected by past offense? I'd have to look closely at the amended complaint to see whether that was pled, but it's my belief that it was. But regardless of whether that's the hinging point, the notice on a municipal's constitutional violation also hinges on them updating their training based upon rulings by this court and the Supreme Court. In 2014, in the Booker case, the courts declared that putting weight on a detainee's back who is non-combative is a constitutional violation, and that was agreed to by Ruge and Herron. Unfortunately, the county continued to allow Austin Slayton, one of their head trainers on uses of force, to continue to train Jonathan Johnson and others in this manner. It doesn't matter that Jonathan Johnson at this stage was the only person to cause the injury. The notice is knowing that you're training someone in an unconstitutional matter, which over the spine is unconstitutional, dangerous, and it occurred in this case and severed the spine of Mr. Willis. Well, aren't you also making a claim? One claim is that that process, that three-point process, was unconstitutional, but the second argument I thought was that their observation of the person in the cell was inadequate. Am I correct or incorrect that that's being alleged as a separate claim? That's incorrect. What we were doing is using the officers, I believe it was Cornelius, his observations confirming that Johnson placed his knee and weight on Mr. Johnson's spine, confirming the facts that that was the mechanism of injury at the same spot, not failure to  No, I'm not talking about failure to intervene. Are you or are you not claiming that the observation of the defendant, I mean the decedent, was inadequate? Their monitoring of him in the prison was inadequate? That was, and we don't have a policy and procedure claim on that portion of it. That was an individual office. Yes. Okay, thank you. We've run out of time. Thank you, your honors. Thank you, counsel. If there are no further questions, we'll consider the case submitted. Appreciate your arguments this morning, and counsel are excused. Thank you. Thank you.